UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

LORI GEIMER,  )
 )
        Plaintiff,  )
 )
v.  )
 )  No. 08 C 5724
ADMINISTAFF COMPANIES,  )
formerly known as ADMINISTAFF  )
OF FLORIDA, INC.,  )
 )
        Defendant.  )

## MEMORANDUM ORDER AND OPINION

MARVIN E. ASPEN, District Judge:

Plaintiff Lori Geimer ("Geimer") filed a three-count complaint against Defendant Administaff Companies ("Administaff") alleging negligence, breach of implied contract, and public disclosure of private facts. (Am. Compl. ¶¶ 12-30.) Presently before us is Administaff's Motion for Summary Judgment. For the reasons discussed below, we grant its motion.

## SUMMARY OF FACTS

Geimer was employed as a loan officer by New Spirit Credit Union ("New Spirit") between September 2006 and April 2007. (Def.'s SOF ¶ 5.) While Geimer was an employee of New Spirit, it maintained a Client Services Agreement with Administaff for the provision of human resource services. (*Id.*) Administaff is a Professional Employer Organization providing services such as benefits and payroll administration to small and medium-sized businesses. (*Id.* ¶ 6, Ex. 2 ¶ 4.) Pursuant to New Spirit's Client Services Agreement with Administaff, Administaff served as a "co-employee" of Geimer in that it provided human resource services to

New Spirit. (*Id.* ¶ 6.) Geimer's employment at New Spirit ended in April 2007 when she was allegedly constructively discharged due to sexual harassment. (Pl.'s SOF ¶ 1.) Geimer filed a discrimination charge against New Spirit with the Illinois Department of Human Rights ("IDHR") in May 2007. (*Id.* ¶ 2.)

In October 2007, Administaff announced the loss of a laptop computer containing personal information of approximately 160,000 current and former employees of Administaff's clients, including Geimer. (Def.'s SOF ¶ 4.) Administaff notified its clients and those employees whose information was contained on the laptop of the loss via a letter, which Geimer received. (Def.'s SOF ¶ 7; Pl.'s SOF ¶ 4.) Administaff also offered one year of free credit monitoring through Equifax. (Def.'s SOF ¶ 7; Pl.'s SOF ¶ 4, Ex. G.) Although Geimer apparently contends that Equifax never notified her of fraudulent attempts to use her personal information (Pl.'s Resp. to Def.'s SOF ¶ 7), she contacted Administaff on January 2, 2008 to inform them that there were over twenty-four unauthorized inquiries into her credit since the loss of the laptop and to request a letter from the company reflecting that her information was stolen.[1] (Def.'s SOF ¶ 8, Ex. E (noting the contents of the telephone call in a call log).) Geimer followed up with Administaff on January 9, 2008 and Administaff attempted to contact her on January 25,

---

[1] Geimer disputes Administaff's statement that she contacted them regarding twenty-four unauthorized credit inquiries, stating that she "had little contact with either Administaff or Equifax on any problems in credit reporting against [her] social security number." (Pl.'s Resp. to Def.'s SOF ¶ 8.) She further stated that she "did not contact Administaff 24 times on inquiries on her social security number nor did she have any information to show that any inquires on her social security number resulted in the fraudulent use of her social security number." (*Id.*) Geimer misreads Administaff's statement. Administaff did not state that she contacted them twenty-four times, but that she contacted them regarding twenty-four credit inquiries. (Def.'s SOF ¶ 8.) Moreover, Administaff provided copies of notes taken by the representatives Geimer spoke with to support their statement. (*Id.*, Ex. 2E.) Therefore, the evidence demonstrates that Geimer was aware of these credit inquires in January 2008.

2008 to resolve any remaining issues. (*Id.*)

Meanwhile, Geimer received a letter from the IDHR on February 13, 2008 indicating that it was holding a fact-finding conference regarding her complaint filed against New Spirit. (Pl.'s SOF ¶ 6.) After that conference, Geimer, under the advice of her attorney, resolved her discrimination claims with New Spirit through settlement. (*Id.* ¶ 7; Def.'s SOF ¶¶ 10, 12.) Geimer entered into an Employment Separation Agreement and Release (the "Release Agreement") on May 7, 2008. (*Id.* ¶ 9; Def.'s SOF ¶ 10.) In exchange for releasing any claims she had against New Spirit and Administaff, Geimer accepted a settlement payment of $20,000.00. (Def.'s SOF ¶ 10.)

Geimer claims that in July 2008 she "became aware of the wrongful and fraudulent use of her social security number by third parties." (Pl.'s SOF ¶ 14.) Although Geimer knew about credit inquiries made using her personal identification in January 2008 (Def.'s SOF ¶ 8), it seems that additional action was taken against her credit some time after January 2008 and that she became aware of such activity in July 2008. Geimer therefore filed a police report for identity theft with the St. Charles Police Department and thereafter filed this suit. (Pl.'s SOF ¶ 15.)

## STANDARD OF REVIEW

Summary judgment is proper only when "there is no genuine issue as to any material fact and the moving party is entitled to a judgment as a matter of law." Fed R. Civ. P. 56(c). A genuine issue for trial exists when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S. Ct. 2505, 2510 (1986). This standard places the initial burden on the moving party to identify "those portions of the pleadings, depositions, answers to interrogatories, and admissions on file,

together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S. Ct. 2548, 2553 (1986) (internal quotations omitted). Once the moving party meets this burden of production, the nonmoving party "may not rest upon the mere allegations or denials of the adverse party's pleading" but rather "must set forth specific facts showing that there is a genuine issue [of material fact] for trial." Fed. R. Civ. P. 56(e). In deciding whether summary judgment is appropriate, we must accept the nonmoving party's evidence as true, and draw all inferences in that party's favor. *See Anderson*, 477 U.S. at 255. However, "our favor toward the nonmoving party does not extend to drawing 'inferences that are supported by only speculation or conjecture.'" *Argyropoulos v. City of Alton*, 539 F.3d 724, 732 (7th Cir. 2008) (quoting *Fischer v. Avanade, Inc.*, 519 F.3d 393, 401 (7th Cir. 2008)). Therefore, the plaintiff cannot merely "raise some metaphysical doubt as to the material facts; [she] must come forward with specific facts showing that there is a genuine issue for trial." *Keri v. Bd. of Trs. of Purdue Univ.*, 458 F.3d 620, 628 (7th Cir. 2006).

## DISCUSSION

In its Motion for Summary Judgment, Administaff argues that the Release Agreement unambiguously disposes of all of Geimer's claims. (Mot. at 5.) Release agreements are contracts and are governed by contract law. *Farm Credit Bank of St. Louis v. Whitlock*, 144 Ill. 2d 440, 447, 581 N.E.2d 664, 667 (Ill. 1991). Under Illinois law, "[t]he intention of the parties to contract must be determined from the instrument itself, and construction of the instrument, where no ambiguity exists is a matter of law." *Id.*; *Gavery v. McMahon & Elliott*, 283 Ill. App. 3d 484, 487, 670 N.E.2d 822, 824 (1st Dist. 1996); *Bruner v. Ill. Cent. R.R. Co.*, 219 Ill. App. 3d

177, 180, 578 N.E.2d 1385, 1387 (5th Dist. 1991). "Where contract terms are clear and unambiguous, they must be given their ordinary and natural meaning and parol evidence cannot be considered to vary their meaning, in the absence of fraud, duress, mistake, or illegality." *Bruner*, 219 Ill. App. 3d at 180, 578 N.E2d at 1387; *see also Farm Credit Bank*, 144 Ill. 2d at 447, 581 N.E.2d at 667. A contract is ambiguous only "if it is capable of being understood in more sense than one." *Farm Credit Bank*, 144 Ill. 2d at 447, N.E.2d at 667.

Geimer argues that the Release Agreement is ambiguous and that we should, therefore, consider parol evidence, such as the intent of the parties. (Resp. at 4.) She further argues that because any claims against Administaff related to the loss of the laptop were not discussed during negotiations and were not mentioned in the Release Agreement, the parties did not intend to include those claims in the Release Agreement. (*Id.* at 9.) Because we agree with Administaff that the Release Agreement is unambiguous, we reject Geimer's request to consider extrinsic evidence.

The relevant portions of the Release Agreement are as follows:

> In exchange for providing you with this additional compensation, you agree to fully release [New Spirit] and Administaff and their parent companies, subsidiaries, and other affiliated companies . . . from any claims you may have against them as of the date you sign the release, whether such claims arise from common law, statute, regulation, or contract. This release includes but is not limited to rights and claims arising under Title VII of the Civil Rights Act . . . . By accepting the additional compensation, you have agreed to release the Released Parties from any liability arising out of your employment with and separation from the Company and Administaff. This would include, among other things, claims alleging breach of contract, defamation, emotional distress, harassment, retaliation, or discrimination based on age, gender, race, religion, national origin, disability, or any other status.

(Def.'s SOF, Ex. 2F.) Geimer has not identified any particular portion of the Release Agreement as ambiguous. Instead, she appears to argue that because the Release Agreement did not

-5-

mention claims related to identity theft, the Release Agreement would be ambiguous if we interpreted it as including them. (*See* Resp. at 9 ("Had the employer or Administaff made the issue of identity theft known, there would be no ambiguity in this case.").) However, the Release Agreement clearly releases Administaff and other parties from all claims brought by Geimer that arise from her employment. Nothing in the language of the Release Agreement limits its contents to claims related to her sexual harassment complaint. In fact, the language of the Release Agreement expressly includes other types of claims. (Def.'s SOF, Ex. 2F ("This Release includes *but is not limited to* rights and claims arising under Title VII.") (emphasis added).) Therefore, we conclude that the Release Agreement unambiguously released the parties of all claims related to Geimer's employment. Although Geimer argues she did not intend to release claims other than her sexual harassment and hostile environment claims (Resp. at 9), the language of the Release Agreement explicitly included claims in addition to those related to her sexual harassment complaint.

In determining whether Geimer's claims are covered by the Release Agreement, we must consider the scope of the agreement, *Perschke v. Westinghouse Elec. Corp.*, 111 Ill. App. 2d 23, 30, 249 N.E.2d 698, 702 (1st Dist. 1969) (explaining that it is appropriate for a court to limit the effect of a seemingly general release to include only those claims contemplated by the wording of the release) (citing *Todd v. Mitchell*, 168 Ill. 199, 204, 48 N.E. 35, 36 (Ill. 1897), and whether her claims were known at the time she entered into the agreement, *Oberweis Dairy, Inc. v. Assoc. Milk Producers, Inc.*, 568 F. Supp. 1096, 1101 (N.D. Ill. 1983) ("It is well established a general release is valid as to all claims of which a signing party has actual knowledge or that he could have discovered upon reasonable inquiry.") (citing *Clear Vu Packaging Inc. v. Nat'l Union Fire*

*Ins. Co.*, 105 Ill. App. 3d 671, 674, 434 N.E.2d 365, 367-68 (2d Dist. 1982). The Release Agreement was limited to claims "arising out of [Geimer's] employment with and separation from" Administaff. (Pl.'s Resp. to Def.'s SOF ¶ 10, Def.'s SOF, Ex. 2F at 1.) As we previously discussed, the agreement was explicitly not limited to civil rights claims, but applied to all claims arising from Geimer's employment. Therefore, Geimer's current claims are covered by the Release Agreement since they arose out of her employment with New Spirit and Administaff. Geimer's personal information would not have been on the lost laptop if she were not an employee of New Spirit (Def.'s SOF ¶ 7, Ex. 2, Ramzel Aff. ¶ 9 (stating that the laptop contained information about current and former Administaff worksite employees)), and her personal information would not have been subject to identity theft had she not been an Administaff worksite employee. Accordingly, we hold that Geimer's identity theft claims related to the lost laptop arose from her employment at Administaff and may be subject to the Release Agreement.

Geimer also apparently argues that her claims could not have been released because she did not know about them until after she signed the Release Agreement. (Resp. at 8 (arguing that such agreements "'will not be extended to cover claims that may arise in the future'") (citing *Feltmeier v. Feltmeier*, 207 Ill. 2d 263, 286, 298 N.E.2d 75, 78 (Ill. 2003).) "Where the releasing party was unaware of claims other than those contemplated by the release, it will be limited to the specific claims contained in the release agreement." *Gavery*, 238 Ill. App. 3d at 487, 670 N.E.2d at 825; *see also Farm Credit Bank*, 144 Ill. 2d at 447, 581 N.E.2d at 667. "Where both parties were aware of an additional claim at the time of signing the release, however, the general release language of the agreement will be given effect to release that claim

as well." *Gavery*, 238 Ill. App. 2d at 487, 670 N.E.2d at 825; *see also Farm Credit Bank*, 144 Ill. 2d at 447, 581 N.E.2d at 667. Furthermore, "a general release is valid as to all claims of which a signing party has actual knowledge or that he could have discovered upon reasonable inquiry." *Oberweis*, 568 F. Supp. at 1101.

As we discussed above, the evidence indicates that Geimer knew about twenty-four credit inquiries made on her social security number. *See supra* at 2, n.1. Yet, Geimer contends that she did not "have any information to show that any inquiries on her social security number resulted in the fraudulent use of her social security number" as of May 7, 2008, when she signed the Release Agreement. (Pl.'s Resp. to Def.'s SOF ¶ 8.) However, it is undisputed that Geimer knew about the loss of personal information and about credit inquiries on her social security number when she signed the Release Agreement. (*Id.*, Pl.'s SOF ¶ 4.) This knowledge was sufficient to make her aware of her claims arising from the loss of the laptop. Even if she did not have actual knowledge of any successful attempts to fraudulently use her social security number to establish credit, she could have discovered such claims with reasonable inquiry. E.g., Oberweis, 568 F. Supp. at 1101. Because her claims are within the scope of the agreement and were either actually known to her or could have been discovered with reasonable inquiry, they are subject to the Release Agreement. Accordingly, Administaff's Motion for Summary Judgment is granted.

## CONCLUSION

For the reasons set forth above, we grant Defendant's Motion for Summary Judgment. Accordingly, this case is terminated.

                                                                 _____
                                                                  Honorable Marvin E. Aspen
                                                                  United States District Judge

Date: March 23, 2009